FILED
2020 Jul-15  PM 02:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

------------------------------------------------------------------------x

Dr. Matthew Hutchinson

        Plaintiff,

                                Civil Action No.
                                7:19-cv-1168-LSC

      -against-

United States Department of Veterans Affairs,
Secretary Robert Wilkie

        Defendant(s).

------------------------------------------------------------------------x

# I.      TABLE OF CONTENTS

I. Table of Contents…………………………………………...……………p. 1-2

II.  Introduction…………………………………………………..…….p. 3

III.  Uncontested Material Facts…………………………………...…..…..p. 3

VI. Legal Analysis…………………………………………….…….p. 7

    A.  Jurisdiction…………………………………………………….p. 7

       1.  Subject Matter Jurisdiction & Venue……………………...........…..p. 7

       2.  Jurisdiction for Count 1: Attorneys' Fee Petition …………...........…..p. 7

       3.  Jurisdiction for Count 2: Failure to Implement DAB Decision …...…..p. 11

    B.  Timeliness……………………………………………………..…..p. 12

1

C. Standard of Review……………………………………………………..p. 13

D. Legal Analysis of Count 1 – Attorney Fee Petition………………....…..p. 14

   1. Legal Standard For Back Pay Act Attorney Fee Awards…..………..p. 14

   2. Undisputed Back Pay Act Fee Award Elements……………..……..p. 15

      a. Undisputed: Procedural Requirements………………………..p. 15

      b. Undisputed: Rate and Reasonableness of Hours…………..……..p. 16

   3. Interest of Justice Standard…………………………………………..p. 16

      a. Agency's Insufficient Analysis of Interest of Justice
         Standard in its Fee Petition Decision………………………..p. 17

      b. An Award of Fees is in the Interest of Justice……………..…..p. 19

         i. Fees Warranted Because the Agency Knew or Should
            Have Known It Would Not Prevail……………………..…..p. 19

         ii. Fees Warranted Because the Agency Acted in Bad
             Faith……………………………………………..……..p. 21

         iii. Fees Warranted Because Failure to Analyze Fee
              Petition Was Gross Procedural Error…………………..p. 23

   4. Remedy: Whether to Remand or Award Fees Directly………………p. 23

E. Analysis of Count 2 – Failure to Implement DAB Decision……...……..p. 26

   1. APA Analysis of Failure to Implement Decision……………………..p. 26

   2. Mandamus Analysis of Failure to Implement Decision……...………p. 29

V. Conclusion & Remedy………………………………………………...…..p. 29

## II.    INTRODUCTION

The instant case stems from the Department of Veterans Affairs and Tuscaloosa VA Medical Centers' failure to properly implement the decision of a federal sector administrative tribunal (the Disciplinary Appeals Board) overturning the termination of the plaintiff, Dr. Hutchinson, from his position as a radiologist at the medical center.  Following the decision and its affirmation the VA wrongly rejected an award of attorneys' fees in a two-sentence decision that failed to analyze the relevant standards in any way.  Similarly, the Tuscaloosa VA Medical Center never returned Dr. Hutchinson's privileges to practice medicine following his reinstatement.

Statutorily, the case primarily deals with the Back Pay Act as well as the rarely litigated statute governing Disciplinary Appeals Boards.  It touches on the Administrative Procedures Act and mandamus law as well.  Functionally the case is an appeal and the parties will not be submitting evidence beyond that found in the administrative record already submitted to this court.

## III.    UNCONTESTED MATERIAL FACTS

1.  This case primarily relates to an appeal of a decision of a Disciplinary Appeals Board ("DAB") of the Department of Veterans Affairs ("Agency") issued on December 22, 2017 ("DAB Decision") following a hearing at the Tuscaloosa VA

Medical Center ("TVAMC") held on November 6 and 7, 2017.  The written decision of the DAB was affirmed by the Agency Secretary's designee on February 13, 2018 and therefore its contents are all uncontested material facts because in an appeal the entire decision of the lower adjudicative body is material. For brevity this section will not repeat facts found in that decision, which can be found at pages 1121 through 1136 of the Administrative Record ("AR"), or the Agency's affirmation of that decision, found on pages 1137 through 1139 of the AR because both constitute an uncontested written decision of the relevant adjudicative body.  As this motion is a dispositive motion on an appeal rather than a normal MSJ the undersigned believes this is the best way to comply with ALND Uniform Initial Order Appendix II's requirements while avoiding unnecessarily repeating the entirety of the lower body's decision.

2.  Defendant operates a medical center in the State of Alabama, County of Tuscaloosa, the TVAMC, providing medical care to U.S. military veterans located at 3701 Loop Rd, Tuscaloosa, AL 35404.

3.  Dr. Matthew Hutchinson is a resident of the State of Alabama, County of Shelby, residing at 2040 Cahaba Crest Drive, Birmingham AL United States 35242 and also maintains a residence in the County of Tuscaloosa located at 3218 Veterans Memorial Parkway, Unit 3107, Tuscaloosa, AL 35404.

4.  Following a report of intoxication at work, the TVAMC's Medical Executive Committee ("MEC") voted on January 23, 2017 that if Dr. Hutchinson enrolled and complied with the Alabama Physician Health Program he should be allowed to keep his medical privileges at TVAMC.  <u>AR</u> 272-73.

5.  At a second MEC meeting on February 17, 2017 TVAMC management made new allegations that Dr. Hutchinson practiced medicine without privileges and managed records deficiently.  <u>AR</u> 274-75.

6.  Following those new allegations the MEC changed its mind and recommended revoking Dr. Hutchinson's privileges.  <u>AR</u> 274-75.

7.  Dr. Hutchinson timely submitted a petition for attorneys' fees to the Agency on March 16, 2018.  <u>AR</u> 1140-88.

8.  The Agency sent a two-sentence letter to Dr. Hutchinson dated January 3, 2019 denying all attorneys' fees, stating only:  "The Office of General Counsel (OGC) review of the fee petition in the above-referenced matter is complete.  We are denying a total recovery of $67,726 for the reason that Mr. Hutchinson was unable to show that fees and costs should be granted in the interest of justice."  <u>AR</u> 1198.

9.  Following the DAB decision TVAMC has never allowed Dr. Hutchinson perform radiological duties.  <u>AR</u> 1199-1217.

10.  On or about February 7, 2018 TVAMC began advertising an open position for a new radiologist.  <u>AR</u> 1248-58.

11.  On February 20, 2018 TVAMC's director ("Director") ordered Dr. Hutchinson's "privileges will still be revoked or at least suspened[ed]." <u>AR</u> 1218.

12.  On February 23, 2018, TVAMC reinstated Dr. Hutchinson without returning his medical privileges, allegedly because "you have not been in direct patient care in excess of 90 days, [so] you must be re-credentialed." <u>AR</u> 1199-20.

13.  That re-credentialing process treated Dr. Hutchinson as an initial applicant for credentials with no right to challenge a rejection of his application. <u>AR</u> 827 (#10).

14.  Sometime on or after February 28, 2018 the Director held, or attempted to hold, a meeting with the designee of the Secretary charged with reviewing and affirming DAB decisions (the Principal Deputy Under Secretary for Health or, "PDUSH")  in order to convince the PDUSH to alter his affirmation of the DAB decision.  <u>AR</u> 1238-46 (eight-page briefing for PDUSH).

15.  Sometime on or before March 7, 2018 the Director asked TVAMC's head of HR whether he could reinstate Dr. Hutchinson with reduced pay and whether he could use new alleged performance or conduct issues to not reinstate Dr. Hutchinson despite the Secretary's order.  *See* <u>AR</u> 1220.

16.  On April 5, 2018 the MEC recommended reinstating Dr. Hutchinson's privileges by a vote of eleven (11) to two (2). <u>AR</u> 1193.

17.  On April 16, 2018 Director Merkle unilaterally rejected the MEC's recommendation to reinstate Dr. Hutchinson's privileges. <u>AR</u> 1194.

18.  On August 1, 2018 TVAMC selected a new individual for the position of Physician – Chief Radiology Service.  AR 1259-60.

19.  On December 6, 2018 TVAMC selected a second new individual for the position of Physician – Chief Radiology Service.  AR 1261.

20.  On December 6, 2018 the TVAMC MEC was called for another meeting to discuss Dr. Hutchinson's privileges.  AR 1195-97.

21.  During the December 6, 2018 MEC meeting the MEC questioned whether failing to reinstate Dr. Hutchinson's privileges would violate the DAB's decision and Secretary's order executing it.  AR 1196 (#4).

22.  During the December 6, 2018 MEC meeting TVAMC's management presented a summary of a full review of Dr. Hutchinson's FY 2015 – FY 2017 radiological reads that claimed 209 out of 4,075 reviewed images required secondary review (5%) and 80 images were alleged to be potential errors by Dr. Hutchinson (1.96%).  AR 1196 (#5).

23.  An error rate of 5% is within the standard of care for radiologists. AR 1131.

24.  At the December 6, 2018 meeting the MEC recommended against reinstating Dr. Hutchinson's privileges and the Director denied his application.  AR 1197.

25.  On December 11, 2018 the Agency sent Dr. Hutchinson a letter informing him that his request for clinical privileges had been denied and that without privileges he is "unable to provide any clinical care at the [TVAMC]." AR 1247.

## IV.    LEGAL ANALYSIS

### A. <u>Jurisdiction</u>

#### 1.  Subject Matter Jurisdiction & Venue

As an action against a federal agency reviewing federal administrative proceedings and their implementation this court has federal question jurisdiction over the instant case.  <u>28 USC §1331</u>; *see e.g.*, <u>Perez v. USCIS</u>, 774 F.3d 960, 965 (11th Cir. 2014).  38 U.S.C. § 7462 also includes a waiver of sovereign immunity granting jurisdiction in DAB appeals, <u>38 U.S.C. § 7462(f)</u>, as does 28 U.S.C. § 1361 for mandamus actions, <u>28 U.S.C. § 1361</u>. Venue is proper because the TVAMC where the DAB case at issue took place is located in Tuscaloosa, AL.

#### 2.  Jurisdiction for Count 1: Attorneys' Fee Petition

38 U.S.C. § 7462(f) provides that an "employee adversely affected by a final order or decision of a Disciplinary Appeals Board (as reviewed by the Secretary) may obtain judicial review of the order or decision."  <u>38 U.S.C. § 7462(f)</u>.  Federal court appeals of DAB decisions are uncommon and 38 U.S.C. § 7462 remains a rarely-litigated statute.  The undersigned has therefore not been able to locate a reported 38 U.S.C. § 7462(f) case directly discussing an attorneys' fee decision by the Secretary[1].

---

[1]    There are a number of reported fee petition appeals in the analogous federal sector forums however, and one such Federal Circuit case is discussed extensively in Section IV(D)(3)(a) herein. *See e.g.*, <u>Afge Local 3599 v. E.E.O.C.</u>, 920 F.3d 794 (Fed. Cir. 2019).

The plain language of the statute, however, makes clear that a decision by the Secretary on attorneys' fees resulting from a DAB appeal is reviewable. Section 7462(f) uses broad language to define reviewable actions; listing both "final orders" and a "decisions" of the DAB or Secretary.  Even if one were to say that an attorneys' fee determination is not a "decision" on the case itself, it is certainly an "order."  Black's Law Dictionary (11th ed. 2019) (an order is "a written direction or command delivered by a government official, esp. a court or judge.").  The term has a broad meaning that "generally embraces final decrees as well as interlocutory directions or commands."  Id.  In other words, any substantial action by the DAB or Secretary reviewing a DAB case is a "decision" or "order" and therefore appealable.

For clarity, it is noteworthy that attorneys' fees in DAB cases are primarily authorized by the Back Pay Act rather than Section 7462 directly, which is also the case in other federal sector civil service termination appeal forums including the Merit Systems Protection Board ("MSPB") and arbitrated grievances.  5 U.S.C. § 5596(b).  The regulations implementing the Back Pay Act direct the "appropriate authority that corrected or directed the correction of the unjustified or unwarranted personnel action" to issue a decision on attorneys' fees. 5 C.F.R. § 550.807(a).  38 U.S.C. § 7462(d) contains a short reference to the Secretary awarding back pay as part of the implementation of a DAB decision, but because it does not provide any

separate standards or direction it should be read as clarifying that the Secretary, rather than the DAB itself, should implement the existing Back Pay Act attorneys' fee decision standards.  *See* 38 U.S.C. § 7462(d) (without this provision the DAB itself, not the Secretary reviewing the decision, would issue an attorneys' fee order).  Therefore, 5 U.S.C. § 5596(b), 5 C.F.R. § 550.807(a), and 38 U.S.C. § 7462 direct the Secretary to issue a decision on fees as part of its execution of a DAB decision and as an execution of a DAB decision it is clearly appealable as a "decision" or "order" of the DAB reviewed by the Secretary.

In the alternative, if the court holds 38 U.S.C. § 7462 does not provide jurisdiction that means there would be "no adequate remedy in a court" and the Administrative Procedures Act ("APA") would provide jurisdiction instead because the Agency's fee petition decision is a final agency action.  5 U.S.C. § 702 (judicial review); 5 U.S.C. § 704 (final agency action reviewable if no adequate remedy); Bennett v. Spear, 520 U.S. 154, 178 (1997) (agency actions "final" when they are the consummation of agency decision making process from which legal consequences flow).  The Supreme Court has explained that § 702 bars jurisdiction over actions for "compensatory relief" but not "equitable actions for monetary relief."  Bowen v. Mass., 487 U.S. 879, 895 (1988) ("Damages are given to the plaintiff to *substitute* for a suffered loss, whereas specific remedies 'are not substitute remedies at all, but attempt to give the plaintiff the very thing to which

10

he was entitled.'"); *see also* <u>Gleason v. Malcom</u>, 718 F.2d 1044, 1048 (11th Cir. 1983) (federal employee "could have sought equitable relief, i.e. reinstatement and back pay, pursuant to the [APA]").  Attorneys fees are not awarded as substitution for any suffered loss and are therefore not "money damages" under § 702.  *See e.g.*, <u>Cobell v. Babbitt</u>, 30 F. Supp. 2d 24, 34-35 (D.D.C. November 5, 1998) ("APA waives sovereign immunity for the plaintiffs' prospective relief [including attorney fees] because it is not an action for money damages. . . .").

### 3.  Jurisdiction for Count 2: Failure to Implement DAB Decision

In Count 1 Dr. Hutchinson is appealing a portion of the Secretary's decision in the DAB case itself (the fee petition), but in Count 2 Dr. Hutchinson is appealing the failure of an arm of the Agency, the TVAMC, to implement the DAB and Secretary's decision in his favor.  Therefore, jurisdiction over Count 2 of the case relies on the APA alone.  The Supreme Court has long held the APA establishes a "basic presumption of judicial review. . . so long as no statute precludes such relief." <u>Abbott Labs. v. Gardner</u>, 387 U.S. 136, 140 (1967).

As stated above, the APA provides jurisdiction over final agency actions for which there is no other adequate remedy and an agency action is "final" if it is the consummation of an agency decision making process from which legal consequences flow.  <u>5 U.S.C. § 704</u>; <u>Bennett</u>, 520 U.S. at 178.  In the instant case a number of Agency actions qualify as final agency actions conferring jurisdiction:

TVAMC's instructions to Dr. Hutchinson ordering him to report for non-radiologist duties consummated the Agency's process of deciding what duties to assign him to upon his return and subjected him to disciplinary action of he refused to follow those orders.  The Agency's order telling Dr. Hutchinson he needed to reapply for privileges completed its process of determining whether he had privileges to practice upon his return following his reinstatement by the DAB and that decision subjected him to the legal consequences of practicing without privileges if he disobeyed it.  Finally, the Agency's order denying his application for privileges completed its process of reexamining whether he should be granted privileges following the DAB reinstatement and legally barred him from practicing medicine at the TVAMC.  Any one of these actions is sufficient to show a final agency action and there is no adequate remedy in a court for any of them because none of them can be appealed.  Therefore, jurisdiction is proper for this count.

### B. <u>Timeliness</u>

The statute authorizing review of DAB decisions does not contain a specific statute of limitations for such review.  *See* <u>38 U.S.C. § 7462(f)</u>.  Therefore, the statute of limitations in the instant case defaults to the six-year catch-all statute of limitations for "every civil action commenced against the United States." <u>28 U.S.C. § 2401(a)</u>.  The same statute of limitations applies to APA and mandamus claims.  *See e.g.*, <u>Nat'l Ass'n of Mfrs. v. DOD</u>, 138 S. Ct. 617, 626-27 (2018)

(APA); <u>W. Va. Highlands Conservancy v. Johnson</u>, 540 F. Supp. 2d 125, 140

(D.D.C. 2008) (mandamus).  All actions at issue took place well within that six-

year time limit and therefore all claims in this case are timely.

### C.  <u>Standard of Review</u>

Section 7462(f) DAB cases and APA cases reviewed by a district court are

subject to essentially the same standard of review.  Section 7462(f) charges courts

with setting aside agency action found to be:  "(A) arbitrary, capricious, an abuse

of discretion, or otherwise not in accordance with law; (B) obtained without

procedures required by law, rule, or regulation having been followed; or (C)

unsupported by substantial evidence."  Similarly, in APA cases courts "compel

agency action unlawfully withheld or unreasonably delayed" and overturn actions

that are "arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law."  <u>5 U.S.C. § 706</u>.  In a review of a formal adjudication, like

that in Claim 1, the APA standard of review is the "unsupported by substantial

evidence" standard rather than the looser "abuse of discretion" standard.  <u>5 U.S.C.</u>

<u>§ 706(2)(F)</u>; <i>see e.g.</i>, <u>Dekalb Cnty. v. U.S. Dep't of Labor</u>, 812 F.3d 1015, 1020

(11th Cir. 2016).  Therefore, Claim 1 is reviewed under the violation of law and

substantial evidence standards regardless of whether the Section 7462(f) or the

APA provides jurisdiction, and Claim 2 is reviewed under the APA's "unlawfully

withheld or unreasonably delayed" and "arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law" standard.  Mandamus claims are not usually discussed in terms of standard of review and therefore the mandamus standard is discussed *infra*.

The traditional summary judgment standard still applies in appeals of administrative actions.  *See e.g.*, Willingham Sports, Inc. v. ATF, 348 F. Supp. 2d 1299, 1307 (S.D. Ala. 2004).  In administrative appeals in which "no genuine issues of material fact exist" however, an evidentiary hearing is unnecessary and cross motions for summary judgment are an appropriate way to decide the case. *See* Id.

### D. Legal Analysis of Count 1 – Attorney Fee Petition

#### 1.  Legal Standard For Back Pay Act Attorney Fee Awards

Under 38 U.S.C. § 7462 and the Back Pay Act an employee is entitled reasonable attorneys' fee reimbursement if the employee is a prevailing party and the award is in the "interest of justice."  5 U.S.C. § 5596(b)(1)(A)(ii); 5 U.S.C. § 7701(g)(1); *see also* Section IV(A)(2) *supra* (explaining interplay between § 7462 and Back Pay Act).  Although there are few DAB specific cases, MSPB and FLSA Back Pay Act cases have strong precedential value because "[t]he Supreme Court has repeatedly made clear that the various federal attorney's fees statutes should be construed to reach a uniform result." Sacco v. U.S., 452 F.3d 1305, 1310 (Fed. Cir., 2006) (discussing the attorney fee award provisions of the Back Pay

Act).  As summarized in an FLRA case the exact requirements for an award of

attorneys' fees under the Back Pay Act are as follows:

> The threshold requirement for entitlement to attorney fees under the Back
> Pay Act is a finding that the grievant was affected by an unjustified or
> unwarranted personnel action which resulted in the withdrawal or reduction
> of the grievant's pay, allowances or differentials.  Once such a finding is
> made, the Back Pay Act further requires that an award of attorney fees must
> be: (1) in conjunction with an award of backpay to the grievant on correction
> of the personnel action; (2) reasonable and related to the personnel action;
> and (3) in accordance with the standards established under 5 U.S.C. §
> 7701(g).
>
> The prerequisites for an award of attorney fees under 5 U.S.C. § 7701(g)(1),
> which applies to all cases except those involving allegations of
> discrimination, are as follows: (1) the employee must be the prevailing
> party; (2) the award of fees must be warranted in the interest of justice; (3)
> the amount of the fees must be reasonable; and (4) the fees must have been
> incurred by the employee.  The standards established under 5 U.S.C. §
> 7701(g) further require a fully articulated, reasoned decision setting forth the
> Arbitrator's specific findings supporting the determination on each pertinent
> statutory requirement, including the basis on which the reasonableness of the
> amount was determined when fees are awarded.

Dep't of Defense v. AFGE Local 2004, 51 F.L.R.A. 155, 158-59 (Sept. 18, 1995)

(noting FLRA Back Pay Act cases follow the MSPB and Federal Circuit).

### 2.  Undisputed Back Pay Act Fee Award Elements

#### a.       Undisputed: Procedural Requirements

Most of the requirements for Back Pay Act attorneys' fee awards discussed

above are mechanical and easy to show.  There is no question that Dr. Hutchinson

was a prevailing party who was awarded back pay in connection with the

correction of a personnel action who incurred attorneys' fees that were related to

the personnel action.  These elements were addressed extensively in the fee

petition brief. *See* <u>AR</u> 1141-44, 1154.  The Agency did not dispute these elements

in its decision.  <u>AR</u> 1198.  Instead, when it awarded $0 in fees to Dr. Hutchinson's

the Agency sole reason was an alleged failure to meet the "interest of justice"

element – which is an admission that it does not dispute the other elements and a

waiver of any such arguments now.  <u>Id</u>.

### b.        *Undisputed: Rate and Reasonableness of Hours*

Similarly, the Agency did not dispute that the attorneys' rate was reasonable

and did not dispute any entries in the detailed fee records Dr. Hutchinson supplied

in his fee petition.   As stated above, the Agency's only stated reason for awarding

$0 in fees was an alleged failure to meet the "interest of justice" standard.  These

elements were discussed extensively in the fee petition to the Agency found in the

AR.[2]  <u>AR</u> 1152-54.  The Agency's failure to dispute the rate and time entries

amounts to an admission and waiver of such arguments now.  <u>AR</u> 1198.

### 3.  Interest of Justice Standard

As stated above, the heart of the fee petition count is the Agency's flawed

determination of whether fees were "in the interest of justice."  There are two

---

[2]        Note that the law governing what rate applies is different than a typical federal court case. The applicable regulation specifies the relevant rate is not the rate in the geographic area where the case is located but the "prevailing community rate for similar services in the community in which the attorney ordinarily practices." <u>5 C.F.R. § 1201.203(a)(3)</u>.

distinct issues to discuss in this element:  First, whether the Agency "fully articulated [a] reasoned decision setting forth [its] specific findings supporting the determination."  And second, whether the substance of the Agency's determination satisfied the substantial evidence standard.

<b><i>a.    Agency's Insufficient Analysis of Interest of Justice<br>Standard in its Fee Petition Decision</i></b>

The Agency's entire decision denying all fees as allegedly "against the interest of justice" took two sentences and included no analysis whatsoever.  The Court of Appeals for the Federal Circuit recently decided an on-point case holding this to be reversable error.  AFGE Local 3599 v. E.E.O.C., 920 F.3d 794 (Fed. Cir. 2019).  While the Federal Circuit is technically persuasive authority for this court it is highly persuasive in this instance because of its jurisdiction over nearly all federal sector civil service appeals – including the vast majority of Back Pay Act cases through its MSPB and Federal Labor Relations Authority jurisdiction.

In AFGE 3599 the petitioner was fired from his position as a mediator at the EEOC.  Id. at 795-96.  He challenged his removal under the collective bargaining agreement with the agency, which is an alternative to an MSPB appeal, and the arbitrator overturned his removal.  Id. at 796.  The arbitrator denied the union's request for attorneys' fees without providing an explanation for that ruling.  Id. at 798.  The union appealed.  Id. at 796.  Like the instant case, the Federal Circuit reviewed the decision as a 5 U.S.C. § 7701(g) Back Pay Act case under the

17

"arbitrary, capricious, an abuse of discretion, or otherwise unlawful, procedurally deficient, or unsupported by substantial evidence" standards.  AFGE Local 3599, 920 F.3d at 796-97.  After demurring on ruling on the merits of the fee determination (discussed *infra*), the court cited extensive case law showing "even on a matter as to which the adjudicator is given broad deference, it is ordinarily necessary for the adjudicator to provide some sort of explanation for its action." Id. at 798-800 ("That is a principle frequently reiterated in administrative law decisions in various contexts.").  The court further noted this principle applies to review of attorney fee petitions even outside the administrative context.  Id. at 800 ("[C]ourts have been careful to insist that the adjudicators responsible for considering attorney fee awards provide a sufficient explanation for their decisions to facilitate appellate review.").  Based on that extensive precedent the court overturned and remanded the fee denial.  Id. at 801.

As in AFGE 3599, the Agency in this case made its Back Pay Act fee petition determination without any analysis whatsoever.  This clearly fails to meet the arbitrary and capricious standard – let alone the more stringent substantial evidence standard – and nothing in the record ameliorates the Agency's failure to do so.  Rather, as will be discussed in the following two sections, the Agency's failure is *more* blatant than in AFGE 3599.  Therefore, clear authority shows the Agency's fee determination in this case should be overturned as well.

### b.    An Award of Fees is in the Interest of Justice

Had the Agency analyzed the interest of justice standard under applicable case law there is no question this case deserves full reimbursement of fees. The landmark case articulating the "interest of justice" standard in Back Pay Act fee awards is Allen v. U.S. Postal Serv.. Allen v. U.S. Postal Serv., 2 M.S.P.R. 420 (1980). The Court of Appeals for the Federal Circuit has "frequently cited the Allen factors with approval." Hilliard v. U.S. Postal Serv., 403 Fed. Appx. 504, 506 (Fed. Cir. 2010 NP); see also AFGE Local 3599, 920 F.3d at 797. Allen sets forth five non-exclusive categories of cases in which an award of attorneys' fees would be "in the interest of justice." Allen, 2 M.S.P.R. at 434-35 (Allen categories "not exhaustive, but illustrative"); see also LIUNA Local 1376 v. HHS, 54 F.L.R.A. 700, 702 (July 31, 1998) ("An award of fees is warranted in the interest of justice when any of the Allen criteria are met."). Here, three particular Allen categories apply: (3) the action was initiated in "bad faith," (4) the agency committed a "gross procedural error" which "prolonged the proceeding," and (5) the agency "knew or should have known that it would not prevail on the merits." Allen, 2 M.S.P.R. at 434-35.

### i.    Fees Warranted Because the Agency Knew or Should Have Known It Would Not Prevail

To determine whether an agency "knew or should have known that it would not prevail on the merits" a court "must determine the reasonableness of an

agency's action in light of the information available to the agency at the time of the disputed action."  Nat'l Ass'n Indep. Labor Local 5, 69 F.L.R.A. 573, 577 (Sept. 20, 2016).  Regarding Charge 2 of the Agency's removal action, the DAB noted the software company whose medical data management program was at issue in the case had already explained to the Agency that the basis for the charge was incorrect and that response was available to the proposing and deciding officials. AR 1123.  Regarding the same charge, the DAB found it "immediately clear. . . that the Medical Record had not been accessed or altered by Dr. Hutchinson" as the Agency had charged.  AR 1123.  The DAB further faulted both the proposing official and Director for the obvious error of "misinterpret[ing] the presence of a signature block, in an unsigned addendum as a signature."  AR 1124.

Similarly, in Charge 3 the DAB found the charge to be incorrect on its face. The Agency expert who examined Dr. Hutchinson's cases for the Agency prior to the proposed removal testified that a 5% error rate is acceptable.  AR 1131. Charge 3, however, was based on an alleged error rate of approximately 0.25% of over 20,000 reviewed cases.  AR 1131.  Further, the DAB wrote that the alleged errors in Charge 3 were not significant clinical errors and were heavily contributed to by improper radiology software systems.  AR 1131.

20

Regarding the penalty, the DAB found that the penalty determination was made despite clear evidence – and even admitted knowledge – that removal was not the appropriate penalty for Dr. Hutchinson's actions.  The proposing official:

> [P]roposed the action 10 days after coming on station, [] only reviewed the evidence file presented to him, [] did not make independent inquiries, [] incorrectly concluded from discussions with HR that removal was the only action possible, [] and would not have proposed removal if Charge 1 was the only charge before him.

AR 1131-32.  Similarly, the MEC had proposed treatment, not removal, for Dr. Hutchinson upon their initial review of the evidence.  AR 1132.  Finally, the Director "acknowledged that the by-laws and VA policy did not recommend removal as the preferred option for employees with substance abuse issues who were willing to seek help, yet opined that he could supersede these" binding regulations and proposed removal anyway.  AR 1132.

In sum, on both charges, the DAB concluded the Agency had "ignored alternative, more reasonable explanations." AR 1132.  Similarly, it not only should have known, but *did* know, that its penalty determination was incorrect.  Any one of the multiple examples above satisfies Allen requirements for a fee award.

### ii.   *Fees Warranted Because the Agency Acted in Bad Faith*

Federal sector case law defines bad faith under the interest of justice standard broadly to encompass any arbitrary or malicious action and depends on the unique facts of each individual case.  *See* Rose v. Dept. of Navy, 34 M.S.P.R.

119, Fn. 2 (1987).  When it initially examined the evidence against Dr. Hutchinson the TVAMC's MEC concluded he should be given the chance to pursue rehabilitation.  <u>AR</u> 1132.  Shortly thereafter, the Medical Center leadership went back to the drawing board and presented the MEC with Charges 2 and 3 against Dr. Hutchinson, which the DAB found to be baseless as discussed extensively in the DAB's decision.  *See generally* <u>AR</u> 1121-36.  The Proposing Official, who had only arrived at TVAMC 10 days before proposing the charges at issue, admitted that he too would not have proposed removal if not for Charges 2 and 3, and that he was not involved in preparing those charges.  <u>AR</u> 1131-32.  The Director on the other hand, openly admitted his decision to remove Dr. Hutchinson was not supported by VA regulations.  <u>AR</u> 1132.

The DAB held this behavior was bad faith, writing it "formed the opinion that Charge 2 and Charge 3 were crafted in an effort to support eventual removal which Charge 1, based upon the bylaws, would not." <u>AR</u> 1132.  The DAB took an equally dim view of TVAMC's Director:

> The testimony of the Director was less forthright.  He was occasionally combative towards the Board, and there was a lack of consistency in his answers regarding the weight given to the charges in deciding upon the appropriate penalty, and what constituted altering the Medical Record. . . . The Director's testimony acknowledged that the by-laws and VA policy did not recommend removal as the preferred option for employees with substance abuse issues who were willing to seek help, yet opined that he could supersede these.

AR 1132.  The DAB also noted that Director Merkle admitted "he had not considered Dr. Hutchinson's explanations regarding Charges 2 and 3."  AR 1132.

In other words, the DAB held the case was brought fraudulently by a dishonest Director who admitted he ignored applicable Agency policy and did not even bother to review the substance of the charges.  These are not inferences based on the record, these are the DAB's own words in its decision.  It is hard to imagine a stronger showing of bad faith than that.

### iii.  *Fees Warranted Because Failure to Analyze Fee Petition Was Gross Procedural Error*

The last relevant factor applies to the case now even though it did not when the DAB first issued its decision.  The Agency issuing a two-sentence fee determination is gross procedural error necessitating this appeal, two more years in litigation, and a significant increase in attorneys' fees.  *See* AFGE 3599, 920 F.3d 794.  That factor makes the case for a full fee award even stronger than when the petition was first submitted and is particularly applicable to the fees incurred by Dr. Hutchinson following the Secretary's fee petition decision.

### 4.  Remedy: Whether to Remand or Award Fees Directly

Upon the determination that the Agency's fee award determination did not meet the required standard this court can either remand the case to the Secretary for a proper fee determination or make such a determination itself.  The court in

AFGE 3599 provided guidance on this issue as well, although there is a crucial

distinction between that case and the instant appeal.

In AFGE 3599 the court stated that "in some cases the record would point so

strongly toward granting a fee award that we could reverse the adjudicator's

denial."   AFGE 3599, 920 F.3d at 798.  It declined to do so there because:

> In his opinion, the arbitrator found that a number of the EEOC's allegations
> were supported by evidence, credited the testimony of those EEOC officials
> who testified at the hearing, and did not credit Mr. Hamilton's denials that
> any of the events set forth in the EEOC's charges had occurred. Nor does the
> record contain undisputed evidence that would have compelled an
> adjudicator to find that the Allen factors indisputably favored granting fees.
> This is therefore not a case in which we can say that no application of the
> Allen factors could reasonably lead to a conclusion that a fee award should
> be denied.

AFGE 3599, 920 F.3d at 798.

Here, in contrast, the facts demand an award under Allen.  Sections

IV(3)(b)(i)-(ii) *supra* discuss the application of Allen to the facts of this case and it

is unnecessary to repeat the same discussion in this section.  What is noteworthy

for the purposes of this section however is that the Allen related findings cited

above are not debatable inferences from the record – they are explicit findings of

the DAB.  How, for example, could one reasonably conclude that the Agency did

not act in bad faith after the DAB "formed the opinion that Charge 2 and Charge 3

were crafted in an effort to support eventual removal which Charge 1, based upon

the bylaws, would not."  Or how could one conclude the agency should not have

known it would not prevail when the DAB wrote that the Director "acknowledged that the by-laws and VA policy did not recommend removal as the preferred option for employees with substance abuse issues who were willing to seek help, yet opined that he could supersede these."

In addition, however, there is an important distinction between the DAB fee petition process and that in every other federal civil service proceeding.  In arbitrations, MSPB cases, and federal sector EEO cases the administrative judge or arbitrator who decides the case also awards fees.  *See e.g., generally*, AFGE 3599, 920 F.3d 794.  In a DAB appeal however, the DAB conducts a hearing and decides the case on the merits but does not award fees.  *See* 38 U.S.C. § 7462(d); 5 C.F.R. § 550.807(a); discussed *supra* Section IV(A)(2).  Fees are determined by the Secretary, who makes that determination based on the decision issued by the DAB. *See* AR 1198.  In the instant case the decision on fees was rendered well over a year after the DAB decision itself and the Director's ex parte lobbying, discussed *infra* Section IV(E)(1), could potentially have affected the subsequent fee determination by the Secretary's designee.  *Compare* AR 1121 (Nov. 6, 2017 DAB decision) *with* AR 1198 (Jan. 3, 2019 fee petition decision).

As a result, the policy rational for deference to the Secretary's fee determination is severely undermined, particularly in a case like this one where the Secretary already mishandled the petition with an unsupported determination.

Similarly, this portion of the case would be the subject of a supplemental fee petition which this court is more qualified to rule on than the Secretary.  Gallo v. DOT, 725 F.3d 1306, 1309-10 (Fed. Cir. 2013) (Back Pay Act also covers fees on appeal); *see e.g.*, AFGE 3599, 920 F.3d at 801 ("Costs to the petitioner.").

Finally, the Agency's bad faith behavior up to this point risks this case ending up back in this court a second time if the Agency continues to flout legal standards.  Judicial efficiency is therefore an additional factor recommending this court exercise its authority to rule on fees.  In sum, a variety of factors strongly suggest an aware of fees be made by this court.

### E. Analysis of Count 2 – Failure to Implement DAB Decision

#### 1. APA Analysis of Failure to Implement Decision

Count 2 centers around the TVAMC's failure to implement the DAB's decision overturning the Agency's Removal and Revocation of Privileges action against Dr. Hutchinson.  As stated in Section IV(C) *supra* TVAMC's failure to return Dr. Hutchinson to his duties and to return his privileges is reviewed under the "unlawfully withheld or unreasonably delayed" and "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" standard. 5 U.S.C. § 706.

The DAB's power is not limited to the issue of professional conduct or competence that created jurisdiction, Title 38 empowers it to rule on any case

"which arises out of (or which includes) a question of professional conduct or competence" and it may therefore rule on privilege actions as they relate to a case before it.  38 U.S.C. § 7462(a); *see also* 38 U.S.C. § 7462(c)(2) (DAB can modify agency actions); 38 U.S.C. § 7462(d)(1) (when executing DAB decision the Secretary may "provide such other remedies as the board found appropriate relating directly to the proposed").

The Agency action before the DAB was not simply a removal action, it was a "Removal and Revocation of Privileges."  AR 1-9.  When the DAB ruled on the case it overturned the Removal and Revocation of Privileges and replaced it with a 30-day suspension.  AR 1135.  The Secretary affirmed that ruling.  AR 1137.  These actions clearly overturned the Agency's revocation of Dr. Hutchinson's privileges and therefore TVAMC is legally obligated to return Dr. Hutchinson's privileges.  TVAMC has never done so however, which is a clear violation of law because it ignores those legally binding decisions.  AR 1199-1217.

Further, TVAMC's Director has shown a clear intent to circumvent the DAB decision.  Immediately after receiving the Secretary's order affirming the DAB decision the Director told HR that Dr. Hutchinson's privileges would still be "revoked or at least suspended" despite the decision, showing he never had any intention to follow the decision.  AR 1218.  Shortly thereafter the Director held (or attempted to hold) a meeting with the Secretary's designee to try and get the

27

designee to reverse the DAB decision despite already affirming it – even though such post-hoc reversal would be legally impermissible and the communication was improper ex parte interference in an administrative decision. <u>AR</u> 1238-46. The Director when so far as to develop a detailed eight-page brief for the meeting. <u>AR</u> 1238-46. Within approximately a week of holding or attempting to hold that meeting the Director asked his head of HR whether he could reinstate Dr. Hutchinson with reduced pay and whether he could use new alleged performance or conduct issues to not reinstate Dr. Hutchinson despite the Secretary's order. *See* <u>AR</u> 1220. When the MEC first evaluated Dr. Hutchinson's privilege application it overwhelmingly recommended reinstatement. <u>AR</u> 1193. The Director unilaterally rejected that recommendation based solely on the pretext that the Agency was conducting a review of Dr. Hutchinson's cases, even though all the information being reviewed was available to the Agency during the DAB case. <u>AR</u> 1194. That review did not even show deficiency in Dr. Hutchinson's care because the error rate it found was well within the standard of care. <u>AR</u> 1131, 1196. Further, even though TVAMC told Dr. Hutchinson it was honestly evaluating his privileges it was actively searching for a new radiologist to replace him. <u>AR</u> 1248-58. Once TVAMC finally found a new radiologist it called a second meeting of the MEC to reject Dr. Hutchinson's privilege application that same day. <u>AR</u> 1261, 1195-97. Finally, even at the meeting in which the MEC finally acquiesced to the Director's

strident desire to deny Dr. Hutchinson privileges, MEC members still discussed whether failing to restore his privileges was a violation of the DAB order. AR 1196 (#4).  In sum, TVAMC's denial of Dr. Hutchinson privileges and failure to return him to his duties were the result of a clear intent by the Director to circumvent the DAB decision.  As such, TVAMC's actions are a clear abuse of discretion.

### 2.  Mandamus Analysis of Failure to Implement Decision

In the alternative if, *arguendo*, the APA does not apply TVAMC's failure to obey the DAB and Secretary's order is so blatant it violates the more exacting mandamus standard as well.  "To show entitlement to mandamus, [plaintiff] must demonstrate (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists.'. . ." Dunlap v. Presidential Advisory Comm'n on Election Integrity, 944 F.3d 945 (D.C. Cir. 2019) (internal citations omitted).  The order of the DAB and Secretary is an indisputable right because it is a clear order of an administrative tribunal, following that order is a clear duty of the TVAMC as a branch of the Agency, and if *arguendo* the APA does not apply then no other remedy exists.

### V.    CONCLUSION & REMEDY

In sum, the Agency's repeated unwillingness to abide by the decision of the lawful administrative adjudicator of Dr. Hutchinson's original case has turned what

should have been a simple administrative order into a years-long ordeal.  Dr.

Hutchinson simply wants the Agency to pay the attorneys' fees his entitled to by

law and implement the decision of the DAB.  He therefore asks this court to 1)

award the full $67,726.00 in attorneys' fees requested in his fee petition to the

Agency, 2) grant a subsequent fee petition for the costs associated with attempting

to get the Agency to comply with the DAB order and with this appeal, and 3) order

the TVAMC to return his privileges and return him to duty as a radiologist.


Dated:  July 15, 2020                    Respectfully Submitted,

*Joshua Kahn*
By:  Joshua Kahn, Esq.,
The Law Offices of Eric L. Pines, PLLC
Georgia Bar No. 623256
Mailing Address:
10101 Fondren Rd #575
Houston, TX 77096
Phone: (832) 533-3242
Fax: 888-215-0397
Email: josh@pinesfederal.com
*Attorneys for Plaintiff*

*/s/ David I. Schoen*
By:  David I. Schoen, Esq.,
Alabama Bar No. 0860-O42D
2800 Zelda Road, Suite 100-6
Montgomery, AL, 36106
Phone: 334-395-6611
Fax: 917-591-7586
Email: Schoenlawfirm@gmail.com
*Attorneys for Plaintiff*

## Certificate of Service

I hereby certify that the foregoing was filed with the Clerk of Court via the CM/ECF system and sent to the following individuals in the following manner per ALND Uniform Initial Order Appendix II on this 15th day of July 2020:

### Court

*Via email to:*

coogler_chambers@alnd.uscourts.gov

*Courtesy Copy and Electronic Copy mailed to:*

United States District Court
Federal Building and Courthouse
Attn: Judge Coogler Chambers
2005 University Boulevard
Tuscaloosa, AL 35401

### Agency

Via email to:

Sarah.Blutter@usdoj.gov
Amanda.Donat@usdoj.gov

*Joshua Kahn*

By:  Joshua Kahn, Esq.,
The Law Offices of Eric L. Pines, PLLC
Georgia Bar No. 623256
Mailing Address:
10101 Fondren Rd #575
Houston, TX 77096
Phone: (832) 533-3242
Fax: 888-215-0397
Email: josh@pinesfederal.com
*Attorney for Plaintiff*

31