FILED
2021 Mar-30 AM 10:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| DR. MATTHEW HUTCHINSON ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 7:19-cv-01168-LSC |
| ) | |
| ) | |
| ROBERT WILKIE ) | |
| Secretary of Veterans Affairs, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OF OPINION

I. INTRODUCTION

Before the Court are two cross-motions for summary judgment—one filed by Plaintiff Dr. Matthew Hutchinson ("Hutchinson") and one filed by Defendant Robert Wilkie, as Secretary of Veterans Affairs. (Docs. 16, 22.) For the reasons stated below, Plaintiff's motion is due to be granted in part and denied in part. Defendant's motion is due to be denied in full.

II. BACKGROUND

The following facts are undisputed by the Parties and supported by the record. Since November 3, 2013, Hutchinson has served as the sole Radiologist for the Tuscaloosa Veterans Affairs Medical Center, and at times he has served as the Chief

Radiologist. (AR 112.) On December 21, 2016, Hutchinson was found to be "under the influence of alcohol while on duty." (AR 001.) The next day, TVAMC summarily suspended Hutchinson's clinical privileges pending a further investigation. (AR 293.)

Following this investigation, TVAMC charged Hutchinson with two additional infractions: "documenting patient medical reports without clinical privileges" and "improper documentation." (AR 01–09.) On May 22, 2017, TVAMC's acting chief of staff proposed Hutchinson's removal and the revocation of his clinical privileges. (AR 055–065.) TVAMC's director sustained the proposed removal on June 20, 2017. (AR 01–09.) Pursuant to the three sustained charges, TVAMC revoked Hutchinson's clinical privileges and removed him from federal employment effective June 26, 2017. (*Id.*)

On July 19, 2017, Hutchinson requested a hearing before the disciplinary appeals board ("DAB") for review of TVAMC's decision to remove him and revoke his privileges. (AR 012–119.) Hutchinson did not contest that he was under the influence of alcohol while at work on December 21, 2016. (AR 1120.) However, the DAB unanimously rejected TVAMC's two remaining charges against Hutchinson. (AR 1121–36.) The DAB specifically found that these two charges "were crafted in an effort to support eventual removal which Charge 1, based upon the bylaws, would

Page **2** of **14**

not." (AR 1136.) Accordingly, the DAB mitigated Hutchinson's penalty to a thirty-day suspension. (AR 1132.)

On February 13, 2018, the Principal Deputy Under Secretary for Health ("PDUSH") sustained the DAB's findings and approved the DAB's recommendations. (AR 1137.) Specifically, he ordered TVAMC "to cancel [Hutchinson's] removal, and replace it with a 30-day suspension, and return [him] to duty." (*Id.*)

PDUSH also ordered an appropriate amount of back pay and told Hutchinson to submit any request for attorney's fees so that PDUSH could make a final determination "regarding entitlement and an appropriate award." *Id.* Hutchinson timely submitted a request for attorney's fees to PDUSH on March 16, 2018. (AR 1140.) On January 3, 2019, PDUSH denied Hutchinson's request because a fee award would not be "in the interest of justice." (AR 1198.) PDUSH provided no further elaboration for his decision. (*Id.*)

Following PDUSH's review of the DAB decision, TVAMC re-hired Hutchinson on February 23, 2018. (AR 1199–20.) However, TVAMC did not return his clinical privileges because he had "not been in direct patient care in excess of 90 days." (*Id.*) On February 7, 2018, TVAMC began advertising an open position for a new radiologist, and by December 6, 2018, TVAMC had selected two new

individuals for the position of Physician—Chief of Radiology Service. (AR 1248–1261.) Since re-hiring Hutchinson, TVAMC has never allowed Dr. Hutchinson to perform radiological duties. (AR 1199-1217.)

III.   JURISDICTION

   A. Claim One—Attorney's Fees

Any claimant challenging a "final order or decision of a Disciplinary Appeals Board (as reviewed by [PDUSH]) may obtain judicial review of the order or decision." 38 U.S.C. § 7462. During his review of the Disciplinary Appeals Board's final decision, PDUSH denied Hutchinson's fee petition. Because this fee determination is part of PDUSH's final decision, this Court has jurisdiction to review his denial of Hutchinson's fee petition under § 7462.

   B. Claim Two—Implementation of the DAB decision

The APA allows judicial review of "final agency action for which there is no other adequate remedy." 5 U.S.C. § 704. An action is final when it is the "consummation of agency decision making . . . from which legal consequences flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997). TVAMC consummated the Veterans Affairs decision-making process when it interpreted the DAB decision to require reapplication for clinical privileges. Because TVAMC designated him as an initial applicant, Hutchinson was unable to appeal TVAMC's subsequent denial of

clinical privileges. *See* AR 827 (The "denial of initial clinical privileges does not carry with it any right to due processes."). Without a right to appeal, TVAMC's decision was unreviewable. Accordingly, it was "final" within the meaning of the APA. Therefore, 5 U.S.C. § 704 grants this Court jurisdiction to review TVAMC's decision.

IV. STANDARD OF REVIEW

Appeals under 38 U.S.C. § 7462(f) and 5 U.S.C. § 704 are subject to similar standards of review. Under § 7462(f), a court will set aside an agency action found to be (1) arbitrary or capricious, (2) obtained without procedures required by law, or (3) unsupported by substantial evidence. 38 U.S.C. § 7462(f). Meanwhile, under the APA, a court will set aside agency action found to be "unlawfully withheld or unreasonably delayed" or "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706.

Under the arbitrary and capricious standard, "the scope of review is a narrow one." *Bowman Transp. Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974). The reviewing court's primary consideration is "whether the decision was based on a consideration of the relevant factors." *Id.* Indeed, the agency "must articulate a 'rational connection between the facts found and the choice made.'" *Id.* (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).

## V. DISCUSSION

### A. Claim One—Attorney Fees

Under the Back Pay Act, a prevailing employee is entitled to reasonable attorney's fees if this fee shifting is "in the interest of justice." 5 U.S.C. § 7701(g)(1). To determine whether a payment would be "in the interest of justice," adjudicators consider (1) whether the agency engaged in a prohibited personnel practice, (2) whether the agency action was clearly without merit or wholly unfounded, (3) whether the agency initiated the action in bad faith, (4) whether the agency committed a gross procedural error that prolonged the proceeding or severely prejudiced the employee, and (5) whether the agency knew or should have known that it would not prevail on the merits when it brought the proceeding. *Allen v. U.S. Postal Serv.*, 2 M.S.P.R. 420, 436 (M.S.P.B. 1980); *See also Torkshire v. Merit Sys. Prot. Bd.*, 746 F.2d 1454, 1456 (Fed. Cir. 1984). These factors, known as the *Allen* factors, are not exhaustive. *Massa v. Dep't of Def.*, 833 F.2d 991, 992 (Fed. Cir. 1987). However, they serve as "directional markers toward defining 'the interest of justice'" standard." *Id.*

Although these standards give the adjudicator broad discretion, "it is ordinarily necessary for the adjudicator to provide some sort of explanation for its

action." *AFGE Local 3599 v. E.E.O.C.*, 920 F.3d 794, 798–800 (Fed. Cir. 2019). If the adjudicator *grants* a fee petition, he must make "a specific finding . . . setting forth the reasons such payment is in the interest of justice." 5 C.F.R. § 550.807(c)(2). However, even a denial requires some explanation from the adjudicator—otherwise, a court could not responsibly review the decision for arbitrariness or capriciousness. *See AFGE Local 3599*, 920 F.3d at 799.

> The Court reprints the entirety of PDUSH's fee denial below:
>
> The Office of General Counsel (OGC) review of the fee petition in the above-referenced matter is complete. We are denying a total recovery of $67,726 for the reason that Mr. Hutchinson was unable to show that fees and costs should be granted in the interest of justice.

(AR 1198.) Here, PDUSH denied Hutchinson's fee petition because the award would not be "in the interest of justice." PDUSH gave no further explanation. He did not analyze any of the *Allen* factors or support his determination with any facts. This cursory parroting of the statute does not qualify as an "explanation" and precludes this Court from meaningfully determining whether his denial was arbitrary or capricious. Indeed, without an explanation from PDUSH, the Court is unable to tell whether he denied Hutchinson's petition for a permissible reason or an impermissible reason.

Therefore, PDUSH's denial of attorney's fees is due to be vacated and remanded so that PDUSH can articulate a "rational connection between the facts

found" and his decision on Hutchinson's attorney fees in light of the *Allen* factors. *See Bowman*, 419 U.S. at 285.

### B. Claim Two—Revocation of Privileges

The DAB can rule on any issue "which arises out of (or which includes) a question of professional conduct or competence." 38 U.S.C. § 7462(a). TVAMC's removal of Hutchinson's clinical privileges arose from questions about his professional conduct—namely his prior alcohol abuse and allegedly improper documentation (AR 1122–24.) Therefore, the DAB had the ability to rule on any appeal of TVAMC's revocation of Hutchinson's privileges. Indeed, any "due process proceeding for the revocation of privileges occurs through . . . the Disciplinary Appeals Board process." (AR 841.) Thus, the only question is whether the DAB exercised its authority and required TVAMC to reinstate Hutchinson's clinical privileges.

Common principles of language guide this Court's interpretation of the DAB's and PDUSH's decisions. Courts should presume that documents mean what their plain language says. *See, e.g.*, *Lee v. Flightsafety Serv. Corp.*, 20 F.3d 428, 433 (11th Cir. 1994) (applying this presumption to regulations); *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1199 (11th Cir. 2007) (applying this presumption to statutes); *U.S. for Use and Ben. of Eastern Gulf, Inc. v. Metzger Towing, Inc.*, 910 F.2d 775, 779 (applying

this presumption to maritime contracts under federal common law). To determine the plain meaning of a term, courts often turn to dictionary definitions for guidance. *Boyd v. Warden*, 856 F.3d 853, 868 (11th Cir. 2017). However, "[t]he meaning of a statement often turns on the context in which it is made." *United States v. Briggs*, 141 S.Ct. 467, 470 (2020) (citing *Tyler v. Cain*, 533 U.S. 656, 662 (2001)). Indeed, courts disfavor an interpretation that would render language "meaningless, redundant, or mere surplusage." *Davis v. Oasis Legal Finance Operating Co.*, 936 F.3d 1174, 1180 (11th Cir. 2019) (quoting *United States v. Canals-Jiminez*, 943 .2d 1284, 1287 (11th Cir. 1991)). *See also* Antonin Scalia & Bryan Garner, *Reading Law: An Interpretation of Legal Texts* 174 (2012) ("If possible, every word and every provision is to be given effect . . . . None should be ignored.").

The DAB's order unambiguously overturns both Hutchinson's removal and his revocation. In its decision, the DAB overturned two of TVAMC's three charges against Hutchinson. (AR 1132.) The DAB specifically found that these two overturned charges "were crafted in an effort to support eventual removal which Charge 1, based upon the bylaws, would not." (*Id.*) In the absence of these two overturned charges, the DAB found "no evidence that the MEC would have recommended revocation of privileges." (*Id.; see also* AR 1051.) Accordingly, the DAB "recommend[ed] that [Hutchinson's] penalty be mitigated to [a] 30-day

suspension." (AR 1132.) The word "penalty" ordinarily means "a type of punishment . . . that is given to you if you . . . do not follow rules." *Penalty*, Cambridge Online Dictionary, dictionary.cambridge.org/us/dictionary/English/penalty (last accessed March 29, 2021). TVAMC punished Hutchinson for alleged violations of the VHA handbook by both revoking his clinical privileges and removing him from the medical staff. (See AR 840) ("A revocation of privileges requires removal from . . . the medical staff.") Thus, both Hutchinson's removal from the medical staff and the revocation of his privileges constitute a single, intertwined "penalty." By mitigating this penalty to a thirty-day suspension, the DAB impliedly ordered a reinstatement of Hutchinson's privileges as well.

    The DAB's comments about the revocation of clinical privileges in section VII of its decision do not conflict with this interpretation. First, the DAB's comments were "solely" for the purpose of determining whether TVAMC's "revocation of clinical privileges is reportable to the National Practitioner Data Base." (AR 1135.) Because these comments relate solely to TVAMC's reporting requirements for Hutchinson's initial revocation, they have no bearing on the DAB's subsequent order. However, to the extent that these comments do provide context for the DAB's subsequent order, they support the reinstatement of Hutchinson's privileges. Indeed, the DAB found that TVAMC's revocation of Hutchinson's

privileges was not based on "substandard care, professional incompetence and professional misconduct." (*Id.*) The absence of this misconduct supports the DAB's decision to mitigate Hutchinson's removal and revocation to a thirty-day suspension.

PDUSH's review of the DAB's decision further supports this interpretation. PDUSH recognized that Hutchinson framed his appeal as a challenge to both his "removal *and* revocation of privileges." (AR 1137) (emphasis added). In response to this appeal, PDUSH chose to "execute" the DAB's decision. (AR 1137.) Specifically, he (1) cancelled Hutchinson's removal, (2) replaced it with a thirty-day suspension, and (3) ordered TVAMC to "return [Hutchinson] to duty." (*Id.*) "Return" commonly means "to restore to a former . . . state." *Return*, Merriam Webster Online Dictionary, Merriam-webster.com/dictionary/return (last accessed March 29, 2021). Therefore, PDUSH plainly ordered TVAMC to restore the duties Hutchinson had before his disciplinary hearing—namely, his duties as Chief of Radiology.

The rest of PDUSH's order supports this interpretation as well. PDUSH directed TVAMC to both "cancel [Hutchinson's] removal" and "return [Hutchinson] to duty." (AR 1137.) Because the first order requires TVAMC to rehire Hutchinson, the second order must provide some additional meaning. The

most straightforward interpretation would require TVAMC not only to rehire Hutchinson but also to reinstate his privileges and return him to clinical duty. A second interpretation would require TVAMC not only to rehire Hutchinson, but to return him to duty as the Chief Radiologist. Either interpretation requires Hutchinson to have clinical privileges.

Instead of complying with PDUSH's order, TVAMC has effectively rehired Hutchinson to a new position. Indeed, when TVAMC revokes a physician's privileges, that revocation also requires "removal from . . . employment" or "reassign[ment] . . . to a position not requiring clinical privileges." (AR 840.) After PDUSH's order requiring TVAMC to cancel Hutchinson's removal, TVAMC chose to reassign him to a position that does not require clinical privileges. To "reassign" someone means "to give someone a different job or position." *Reassign*, Cambridge Online Dictionary, Dictionary.cambridge.org/us/dictionary/reassign (last accessed March 29, 2021). However, giving Hutchinson a different job violates PDUSH's order to "return [him] to duty." Indeed, Hutchinson has not been on clinical duty since his appeal, and TVAMC subsequently hired a new chief of radiology in Hutchinson's place.

If TVAMC could treat Hutchinson as an initial applicant post-appeal, it could effectively evade DAB review of any of its adverse privileging decisions. Indeed,

Hutchinson's appeal took well over ninety days. Therefore, even for a capricious revocation, TVAMC could simply wait for the DAB's reversal of its decision, treat the physician as an initial applicant because the appeal took longer than 90 days, and then deny the physician's privileges again—this time giving the physician no right to appeal.

PDUSH plainly ordered TVAMC to return Hutchinson to his position as a Radiologist and reinstate his privileges. The context and function of the administrative appeals process supports this interpretation. Therefore, as to Claim Two, TVAMC's motion for summary judgment is due to be denied, and Hutchinson's motion for summary judgment is due to be granted.

## VI. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment (doc. 16) is due to be GRANTED in part and DENIED in part. Defendant's Motion for Summary Judgment (doc. 22) is due to be DENIED in full. As to Claim One, the Secretary's denial of Hutchinson's fee petition is VACATED and REMANDED to be reconsidered in accordance with the Court's memorandum opinion, above. As to Claim Two, TVAMC is ordered to reinstate Dr. Matthew Hutchinson's clinical privileges in accordance with Principal Deputy Under Secretary of Health's execution of the Disciplinary Appeal Board's order. A separate order will be entered.

**DONE** and **ORDERED** on March 30, 2021.

_L. Scott Coogler_
United States District Judge

203171